**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MICHAEL GORGA
DEMETRIUS MCFADDEN
KEVIN RYAN

Plaintiffs,

v.

CITY OF NEW YORK,

Defendant.

Case No. _______________

**COMPLAINT**

(Jury Trial Demanded)

**COMPLAINT**

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Complaint against the City of New York ("City") state as follows:

**INTRODUCTION**

1. Plaintiffs are current and former employees of the Defendant, City of New York, who work or have worked in the position of High-Pressure Plant Tender ("HPPT") in the Department of Citywide Administrative Services ("DCAS"). Plaintiffs bring this action against Defendant for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted

Plaintiffs to perform uncompensated overtime work before and/or after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based.

**PARTIES**

3. Plaintiffs, all of whom are listed in Exhibit A, have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4. Each of the Plaintiffs in this action, while employed by Defendant, has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

8. Plaintiffs are, and have been at all times material, employed by Defendant within the last three years and continuing to date, in the position of High Pressure Plant Tender ("HPPT") at DCAS, also referred to as "Boiler Tenders," whose principal job duties, like the principal job

duties of all others similarly situated, include, but are not limited to: operating, monitoring, tending, maintaining, and repairing oil and gas fired high pressure boilers and related equipment, as well as other heating, ventilation, air conditioning, and/or related auxiliary systems that service DCAS buildings and offices.

9. For example, at all times material, Plaintiff Michael Gorga has worked for Defendant as an HPPT assigned to 120 Schermerhorn Street, Brooklyn, NY, where he has been tasked with performing the principal activities of an HPPT, including tending to the steam heating and ventilation systems for the DCAS building at that location. For further example, at all times material, Plaintiff Demetrius McFadden has worked for Defendant as an HPPT assigned to 345 Adams Street, and 120 Schermerhorn Street in Brooklyn, NY, where he has been tasked with performing the principal activities of an HPPT, including tending to the HVAC systems for the DCAS facilities at those locations. For further example, at all times material, Plaintiff Kevin Ryan worked for Defendant as an HPPT assigned to 26 Central Avenue, Staten Island, NY, and 210 Joralemon Street, Brooklyn, NY, until his retirement in November 2021, where he had been tasked with performing the principal activities of an HPPT, including tending to the steam heating and ventilation systems for the DCAS buildings at those locations.

10. While working as an HPPT, Plaintiffs and all others similarly situated are regularly scheduled to work at least 40 hours a week. Specifically, each week, they are regularly scheduled to work five shifts of eight hours. HPPTs' scheduled shifts are set from 6:00 am to 2:00 pm, from 2:00 pm to 10:00 pm, or 10:00 pm to 6:00 am.

11. Because of the delicate and dangerous nature of high-pressure plants, Defendant requires that the plants be attended to 24 hours a day, seven days a week, while in operational status. Thus, when assigned to a post at a particular building location, Plaintiffs and all those

similarly situated are not permitted to leave their posts without proper relief from the oncoming HPPT because the plant can never be left unattended.

12. Additionally, pursuant to Defendant's uniformly applicable workplace policies and practices, HPPTs must arrive prior to the start of each scheduled shift in order to perform their principal activities, including performing a walkthrough of the plant and an equipment and/or information exchange to ensure they are fully aware of the state of the plant, any issues that arose during the last shift, or any other pertinent information from the on-duty HPPT. Likewise, at the end of their shifts, even if the next shift has arrived, HPPTs must remain on their posts performing their principal job duties until the scheduled end of their shift and until the information exchange is completed with the relieving HPPT.

13. As a result of these and other of Defendant's uniform workplace policies and practices, Plaintiffs and all those similarly situated routinely work in excess of their regularly scheduled shifts, such that they necessarily work overtime in excess of their regularly scheduled 40 hour workweeks. However, Defendant fails to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, Defendant fails to compensate Plaintiffs and all other similarly situated HPPTs for hours worked before the start of their scheduled shifts and after the end of their scheduled shifts.

14. While working as an HPPT, Plaintiffs and all others similarly situated may be compensated for hours worked over 40 in a workweek if the overtime hours were pre-approved by Defendant. However, when Defendant compensates Plaintiffs and all others similarly situated for such hours, it systemically fails to pay Plaintiffs and all others similarly situated for this overtime work at the correct regular rate of pay.

***Defendant's Fair Labor Standards Act Violations are Willful***

15. CityTime tracks Plaintiffs' work time on a minute-by-minute basis. However, Defendant does not pay the HPPTs on a minute-by-minute basis. This is because when Defendant programmed and implemented CityTime, it chose to utilize a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out).

16. Upon information and belief, Defendant failed to conduct an audit or otherwise investigate any of the work minutes captured by CityTime as "uncompensated" time, including but not limited to what HPPTs are doing during their recorded pre-shift or post-shift time.

17. Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are not readily available to Plaintiffs and other HPPTs because they are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC*,* Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

18. Upon information and belief, Defendant failed to seek advice from the Department of Labor regarding whether its pay policies and practices comply with the FLSA.

19. The Defendant is well aware of its obligation to pay employees for overtime work which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. *See, e.g., Foster v. City of New York,* 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware, despite required use of the CityTime system);

*De La Cruz v. City of New York,* 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017) (same); *Perez v. City of New York,* 2017 U.S. Dist. LEXIS 159473 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that Associate Urban Park Rangers failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours). In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York,* Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70. However, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work which is performed with their supervisors' knowledge and is recorded in the CityTime system.

20. Upon information and belief, Defendant has not disciplined any HPPT for performing unpaid pre-shift or post-shift overtime work.

***Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated***

21. While working as HPPTs for DCAS, Plaintiffs and all others similarly situated routinely work more than 40 hours a week. Plaintiffs are scheduled to work five shifts of eight hours in length each week. Thus, Plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek as their regular schedule.

22. Plaintiffs and all others similarly situated frequently work overtime in addition to their regular 40 hours of work per week performing their principal job duties, for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts and after the end of their regularly scheduled shifts, all without compensation. This pre-shift and post-shift work necessarily causes Plaintiffs and all others

similarly situated to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

23. Plaintiffs and all others similarly situated begin work before the official start time of their shifts and/or stop working after the end of their official shifts. Such pre-shift and post-shift work includes, but is not limited to, the tasks listed in Paragraphs 8, 9 and 12.

24. For example, Plaintiff Michael Gorga routinely works more than 40 hours in a workweek at his assigned location at 120 Schermerhorn Street. When Plaintiff Gorga works more than 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 8, 9, and 12 before the official start of his scheduled eight-hour shift and/or after the end of his scheduled shift. Specifically, Defendant has failed to compensate Plaintiff Gorga for overtime work it suffered or permitted him to perform at all times he was assigned to work a scheduled shift of 6:00 a.m. to 2:00 p.m. On these occasions, Plaintiff Gorga routinely arrives approximately 15-30 minutes prior to the start of his scheduled shift and begins performing work tasks such as performing an information exchange with the HPPT on the prior shift and doing a round of the plant. Thus, Plaintiff Gorga is not compensated for at least approximately one hour and 15 minutes and as much as 2 hours and 30 minutes of additional overtime work beyond his scheduled shift per week at all times when he is assigned to work the schedule noted above, as well as other schedules.

25. For example, Plaintiff Demetrius McFadden routinely works more than 40 hours in a workweek at his assigned location at 345 Adams Street, and at his previous location, 120 Schermerhorn Street. When Plaintiff McFadden works more than 40 hours, Defendant fails to

compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 8, 9, and 12 before the official start of his scheduled eight-hour shift and/or after the end of his scheduled shift. Specifically, Defendant has failed to compensate Plaintiff McFadden for overtime work it suffered or permitted him to perform at all times he was assigned to work a scheduled shift of 6:00 a.m. to 2:00 p.m. On these occasions, Plaintiff McFadden routinely arrives approximately 15-30 minutes prior to the start of his scheduled shift and begins performing work tasks such as performing an information exchange with the HPPT on the prior shift and doing a round of the plant. Thus, Plaintiff McFadden is not compensated for at least approximately one hour and 15 minutes and as much as 2 hours and 30 minutes of additional overtime work beyond his scheduled shift per week at all times when he is assigned to work the schedule noted above, as well as other schedules.

26. For example, Plaintiff Kevin Ryan routinely worked more than 40 hours in a workweek at his assigned location at 26 Central Avenue, and at his previous location, 210 Joralemon Street until his retirement in November 2021. When Plaintiff Ryan worked more than 40 hours, Defendant failed to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 8, 9, and 12 before the official start of his scheduled eight-hour shift and/or after the end of his scheduled shift. Specifically, Defendant has failed to compensate Plaintiff Ryan for overtime work it suffered or permitted him to perform at all times he was assigned to work a scheduled shift of 2:00 p.m. to 10:00 p.m. On these occasions, Plaintiff Ryan routinely arrived approximately 15-20 minutes prior to the start of his scheduled shift and began performing work tasks such as performing an information exchange with the HPPT on the prior shift and doing a round of the plant. Thus, Plaintiff Ryan was not compensated for at least approximately one hour and 15 minutes and as much as 1 hour and 40

minutes of additional overtime work beyond his scheduled shift per week at all times when he was assigned to work the schedule noted above, as well as other schedules.

27. All HPPTs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40, because Defendant fails to compensate HPPTs for daily pre-shift and post-shift work. The amount of pre-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records.

***The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated***

28. While working as HPPTs during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to night shift differentials, premium pay for work performed on Saturdays, and premium pay for work performed on Sundays. These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all other similarly situated. However, on occasions when Plaintiffs are paid overtime compensation, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs.

29. Defendant fails to include premium payments including those listed in Paragraph 28 in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice. The failure to include these payments in Plaintiffs' regular rate means that when Plaintiffs receive paid overtime for working in excess of 40 hours a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

30. For example, during the past three years, Plaintiff Gorga has earned night shift differentials and/or other premium pay while working as an HPPT during weeks in which he earned overtime compensation and he also worked shifts on Sundays. However, on these occasions, Defendant did not include these payments in the calculation of his overtime rate during those workweeks. For further example, Plaintiff McFadden has earned night shift differentials and/or other premium pay while working as an HPPT during weeks in which he earned overtime compensation and he also worked shifts on Sundays. However, on these occasions, Defendant did not include these payments in the calculation of his overtime rate during those workweeks. For further example, Plaintiff Ryan has earned night shift differentials and/or other premium pay while working as an HPPT during weeks in which he earned overtime compensation and he also worked shifts which covered time between 6:00 pm and 6:00 am. However, on these occasions, Defendant did not include these payments in the calculation of his overtime rate during those workweeks.

31. All HPPTs employed by Defendant who receive premium payments pursuant to Agency-wide policy and/or collective bargaining agreement, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each HPPT Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

## COUNT I

## FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

32. Plaintiffs hereby incorporate by reference paragraphs 1 through 31 in their entirety and restate them herein.

33. At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 hours a workweek, they have performed work activities, including but not limited the tasks enumerated in Paragraphs 8, 9 and 12, without compensation before the start of their scheduled shifts and after the end of their scheduled shifts, all of which is recorded on Defendant's timekeeping system. This pre-shift and post-shift work has caused and continues to cause Plaintiffs to work in excess of 40 hours in a given week without receiving proper compensation for all overtime hours. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

34. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts and after the official end of their scheduled shifts.

35. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendant and its agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by

the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

36. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

37. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

38. Plaintiffs hereby incorporate by reference paragraphs 1 through 37 in their entirety and restate them herein.

39. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift differential pay, and premium pay on the weekends, in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include night shift differential pay and other forms of additional compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

40. As a result of Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

41. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

42. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

43. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: October 11, 2022

Respectfully submitted,

*/s/ Molly A. Elkin*
Molly Elkin
Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
mae@mselaborlaw.com
smb@mselaborlaw.com

*/s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON, LLP
1040 Avenue of the Americas
20th Floor
New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com
esprotzer@spivaklipton.com

*Counsel for Plaintiffs*